Brad D. Rose
Dyan Finguerra-DuCharme
Ryan S. Klarberg
PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036
Tel: (212) 421-4100
*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SUNRISE (SHENGZHOU) TEXTILES CO., LTD. and SMART APPAREL (U.S.), INC., <br><br> Plaintiffs, <br><br> - against - <br><br> E & E CO., LTD. d/b/a JLA HOME, <br><br> Defendant. | Civil Action No. _____ <br><br> **COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs Sunrise (Shengzhou) Textiles Co., Ltd. ("Sunrise") and Smart Apparel (U.S.), Inc. ("Smart Apparel") (collectively, "Plaintiffs"), by their attorneys Pryor Cashman LLP, allege as follows against Defendant E & E Co., Ltd. d/b/a JLA Home ("Defendant" or "JLA Home"):

**NATURE OF ACTION**

1. This is an action for willful trademark infringement, unfair competition, among other statutory and common law violations.

2. Since at least as early as 2008, Plaintiffs, either directly and/or through affiliated, licensed entities, have manufactured and sold apparel and textile products under the LIQUID COTTON mark throughout the United States, including in this District. Through Plaintiffs' use of the LIQUID COTTON mark for nearly a decade in connection with high-quality fabric and apparel, the mark serves as a single source identifier and has become a substantial and valuable

commercial asset to Plaintiffs.

3.      Smart Apparel is a subsidiary and licensee of Sunrise that receives and processes purchase orders for products sold under the LIQUID COTTON mark.

4.      Several years after Sunrise firmly established its common law rights in the LIQUID COTTON mark, Defendant began selling linens under the identical LIQUID COTTON mark.

5.      Defendant even admits in an United States Patent and Trademark Office ("USPTO") pleading that consumer confusion is likely to arise from Defendant's use of the LIQUID COTTON mark on closely related goods.  Specifically, Defendant filed a petition to cancel registrations owned by Sunrise for the LIQUID COTTON mark.[1]  In support of that petition, Defendant repeatedly alleges that "confusion and deception as to the origin of goods bearing the LIQUID COTTON mark would occur . . . Many persons familiar with [the LIQUID COTTON mark] would be likely to buy goods made by [Plaintiff] or a licensee as and for a product made, sold by, or associated with [Defendant]."  A true and correct copy of the petition for cancellation is attached hereto as Exhibit A.

6.      In the petition to cancel, Defendant ignores the pertinent fact that regardless of the viability of Sunrise's registrations, Sunrise enjoys substantial common law rights in the LIQUID COTTON mark.  Thus, Defendant's own pleading contains admissions that the parties' marks cannot peacefully co-exist in the marketplace.

---

[1] Defendant filed a U.S. trademark application for the LIQUID COTTON mark, which the USPTO refused on the grounds that the applied-for mark was confusingly similar to the LIQUID COTTON registrations owned by Sunrise. In response to the office action, Defendant filed a petition to cancel those registrations on the grounds that the mark is not used in connection with all of the identified goods.  Plaintiffs do not rely upon those registrations in the instant action.

7. Despite letters from Sunrise asserting its priority through common law usage and demanding that Defendant cease selling its infringing products, Defendant continues to sell unauthorized products under the LIQUID COTTON mark.

8. Notwithstanding Sunrise's prior rights in the LIQUID COTTON mark for closely related goods, Defendant commenced use of the LIQUID COTTON mark and filed U.S. trademark application Serial No. 86/077,468 seeking to register the LIQUIDCOTTON mark (in stylized form) for use in connection with Class 24 "sheets sets, the goods made wholly or in substantial part from cotton." The goods identified in Defendant's application are closely related to the goods upon which Plaintiffs use the LIQUID COTTON mark.

9. Defendant's actions have caused and are causing immediate and irreparable harm to Plaintiffs. To redress the harm that the Defendant is causing to Plaintiffs and to the public, Plaintiffs bring claims for unfair competition under Section 43(a) of the United States Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. § 1125(a), common law trademark infringement and other claims under New York's statutory and common law. Plaintiffs seek injunctive and monetary relief on account of Defendant's egregious, willful and wanton activities, including exemplary damages, attorneys' fees and costs.

**PARTIES**

10. Plaintiff Sunrise (Shengzhou) Textiles Co., Ltd. is a corporation of the People's Republic of China with offices at No.69 Jiajia Road, East District Shengzhou Econ Dev Zone Zhejiang, China.

11. Plaintiff Smart Apparel (U.S.), Inc. is a corporation of the State of Delaware, with its principal place of business located at 525 Seventh Avenue, New York, New York 10018. Smart Apparel is authorized to business in the State of New York.

12. Upon information and belief, Defendant E & E Co., Ltd. d/b/a JLA Home is a corporation of the State of California, with its principal place of business located at 45875 North Loop East, Fremont, California 94538.

## JURISDICTION AND VENUE

13. Jurisdiction is proper in this Court pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1125, 1331, 1338(a) & (b) and 1367, because the action involves claims arising under the Lanham Act and related state law claims.

14. Jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1332(a), because the amount in controversy is in excess of $75,000, exclusive of interest and costs, and there is diversity between the parties.

15. This Court has personal jurisdiction over Defendant because, upon information and belief, Defendant is doing business in New York and in this District specifically, contracted to supply goods or services in New York and in this District specifically, the claims at issue arise out of its transaction of business and/or supplying goods and services directed to consumers residing in New York and in this District specifically, and/or Defendant has committed infringing acts outside of New York causing injury to Plaintiffs in New York and in this District specifically and/or Defendant regularly does or solicits business in New York and in this District specifically and/or derives substantial revenue from goods used or sold or services rendered in New York and in this District specifically and/or expects or reasonably should expect its infringing conduct to have consequences in New York and in this District specifically and derive substantial revenue from interstate commerce. These activities fall within the long-arm statute of the State of New York, CPLR §§ 301 and 302(a).

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction in this District because it is transacting business and committing tortious acts within the State of New York and this District.

## FACTS

### I. Plaintiffs and Their Businesses

17. Sunrise is a partially-owned subsidiary of Youngor Group Co. Ltd. ("Youngor Group"), a Chinese public textiles and clothing enterprise located in Ningbo, Zhejiang, China.

18. Youngor Group is primarily engaged in the manufacture and the worldwide sale of apparel and textile products, such as suits, shirts and casual wear.

19. Among Plaintiffs' many popular and successful products is LIQUID COTTON fabric, which has been sold to U.S. customers and used to manufacture apparel sold and distributed nationwide in the U.S. since at least as early as 2008.

20. Also since at least as early as 2008, Sunrise, through its predecessor-in-interest, Ningbo Sunrise Textile Dyeing And Finishing Co., Ltd. ("Ningbo"), its affiliate and licensee, Sunrise (Shengzhou) Knits Co., Ltd. ("Sunrise Knits"), and its subsidiary and licensee, Smart Shirts Limited ("Smart Shirts"), has been manufacturing, offering for sale and selling apparel and textile products under the LIQUID COTTON mark to major department stores throughout the United States.

21. Specifically, Sunrise's predecessor-in-interest Ningbo has been manufacturing, offering for sale and selling clothing under the LIQUID COTTON mark since at least as early as 2008.

22. Sunrise's subsidiary and licensee Smart Shirts has been manufacturing, offering for sale and selling clothing under the LIQUID COTTON mark since at least as early as 2008.

23.     Sunrise's affiliate and licensee Sunrise Knits has been manufacturing, offering for sale and selling clothing under the LIQUID COTTON mark since at least as early as 2011.

24.     Pursuant to an assignment agreement, the commercial use of the LIQUID COTTON mark by Ningbo inures to the benefit of Sunrise.

25.     Pursuant to license agreements, the commercial use of the LIQUID COTTON mark by Smart Shirts and Sunrise Knits inures to the benefit of Sunrise.

26.     Smart Apparel is a subsidiary and licensee of Sunrise.

27.     Pursuant to a license agreement with Sunrise, Smart Apparel uses the LIQUID COTTON mark in the U.S. and in this District specifically, including, but not limited to, through receiving and processing purchase orders for products sold under the LIQUID COTTON mark.

28.     Through Plaintiffs' continuous use of the LIQUID COTTON mark on and in connection with textile fabric and clothing since at least as early as 2008, and their reputation in the marketplace in connection with manufacturing and/or selling high-quality fabric and clothing, the LIQUID COTTON mark has become a substantial and valuable commercial asset.

29.     For over eight years, consumers have come to recognize the LIQUID COTTON mark as a single source identifier for Plaintiffs' high-quality textile fabric and clothing. Accordingly, Plaintiffs enjoy substantial goodwill in the LIQUID COTTON mark.

**II.     Defendant and Its Infringing Activities**

30.     Upon information and belief, Defendant JLA Home designs, manufactures and distributes home textiles and accessories, such as comforters, sheets and sheet sets, bedspreads, quilts, blankets, throws, mattress pads, pillow covers, bed pillows and decorative pillows.

31.     Upon information and belief, Defendant manufactures, markets, promotes and offers for sale goods bearing the LIQUID COTTON mark in U.S. commerce.

32. Defendant is not authorized to manufacture, market, promote or sell products bearing Sunrise's LIQUID COTTON mark.

33. Upon information and belief, Defendant began using the LIQUID COTTON mark years after Sunrise established its common law rights in the LIQUID COTTON mark.

34. Defendant's use and registration of Sunrise's LIQUID COTTON mark is likely to cause confusion, mistake and deception of consumers that Plaintiffs are the source of its products or, at the very least, has licensed the mark or is otherwise affiliated with Plaintiffs. The likelihood of confusion is also heightened because both parties use the LIQUID COTTON mark in connection with products manufactured with cotton fabric and, upon information and belief, both parties are also in the fashion industry.

35. Defendant repeatedly admits that such confusion is likely in a pleading filed with the USPTO. Defendant specifically argued that Sunrise and Defendant cannot co-exist in the marketplace using the identical mark in connection with their respective goods.

36. Sunrise sent a letter to Defendant demanding that it cease from marketing, promoting, manufacturing, offering for sale and selling any products that use Sunrise's LIQUID COTTON mark, or any mark confusingly similar thereto.

37. Sunrise also demanded that Defendant abandon its U.S. trademark application for the LIQUID COTTON mark.

38. In willful disregard of Plaintiffs' intellectual property rights, of which Defendant was on actual notice, upon information and belief, Defendant continues to market, promote, manufacture and offer for sale products that infringe Plaintiffs' rights and cause consumer confusion. Such ongoing conduct reflects Defendant's defiance and willful intent to infringe and violate Plaintiffs' rights.

39. The likelihood of confusion, mistake and deception created by Defendant's sale of its infringing products is causing irreparable harm to Plaintiffs and the goodwill associated with Sunrise's LIQUID COTTON trademark and Plaintiffs' brand.

40. Upon information and belief, Defendant knows, and at all relevant times knew, that consumers were likely to believe that Defendant's products bearing the LIQUID COTTON mark were authorized, sanctioned or licensed by Plaintiffs, even though it was not.

41. Defendant's conduct described herein is intentional, fraudulent, malicious, willful and wanton.

42. Defendant's conduct has injured Plaintiffs, and if not enjoined, will continue to injure Plaintiffs.

43. Defendant's unlawful actions described herein commenced years after Plaintiffs began using the LIQUID COTTON mark.

44. Plaintiffs will suffer irreparable harm to their business reputations and the goodwill associated with their brand because they have no control over Defendant's products.

### FIRST CLAIM
### Federal Unfair Competition
### 15 U.S.C. § 1125(a)

45. Plaintiffs repeat and reallege the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

46. Sunrise owns all common law right, title and interest in and to the LIQUID COTTON mark for use on and in connection with, *inter alia*, high-quality fabric and clothing, and Sunrise (and its licensees, including Smart Apparel) hold the exclusive right to market and sell these goods under the LIQUID COTTON mark.

47. Smart Apparel uses the LIQUID COTTON mark in the U.S. and in this District specifically, including, but not limited to, through receiving and processing purchase orders for products sold under the LIQUID COTTON mark.

48. Plaintiffs have used the LIQUID COTTON mark in connection with fabrics and clothing since at least as early as 2008, and they have developed a strong reputation in the marketplace for offering high quality goods.

49. Without authorization, Defendant is using the LIQUID COTTON mark in connection with goods that are closely related to Plaintiffs' goods.

50. Defendant's unauthorized use of the LIQUID COTTON mark has caused and is likely to cause confusion as to the source of Defendant's goods, all to the detriment of Plaintiffs.

51. Defendant's conduct as alleged herein, including its unauthorized use of the LIQUID COTTON mark in connection with closely related goods, constitutes a false designation of origin as such conduct is likely to cause confusion and/or to deceive users and consumers as to the origin, sponsorship, affiliation, connection and/or association of Plaintiffs with Defendant's goods and/or services.

52. Defendant's goods offered under the LIQUID COTTON mark are calculated and intended to deceive and are likely to deceive consumers into believing that they are Plaintiffs' goods and/or Plaintiffs are associated with the goods.

53. Defendant is capitalizing on and profiting from the likely consumer confusion between its infringing goods sold under the LIQUID COTTON mark, on the one hand, and Plaintiffs' closely related goods sold under the LIQUID COTTON mark, on the other hand.

54. Plaintiffs do not now and have never sponsored or approved or authorized Defendant's use of their marks or other intellectual property.

55. Defendant's conduct is willful and deliberate and done with the intent to unfairly commercially benefit from the goodwill associated with Plaintiffs, including Sunrise's LIQUID COTTON trademark.

56. The foregoing acts of Defendant constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

57. Defendant's unfair competition has caused and is causing great and irreparable harm and damage to Plaintiffs, and unless permanently restrained and enjoined by this Court, such irreparable harm will continue.

58. As a direct and proximate result of Defendant's wrongful acts, Plaintiffs have suffered and continue to suffer and/or are likely to suffer damage to the LIQUID COTTON trademark, business reputation and goodwill. Defendant will continue to use, unless restrained, Sunrise's LIQUID COTTON mark, and/or marks confusingly similar thereto, and Defendant will cause irreparable damage to Plaintiffs. Plaintiffs have no adequate remedy at law and are entitled to an injunction restraining Defendant, its respective officers, agents, and employees, and all persons acting in concert with Defendant, from engaging in further acts of infringement and unfair competition.

59. Plaintiffs are further entitled to recover from Defendant the actual damages that they have sustained and/or are likely to sustain as a result of Defendant's wrongful acts.

60. Plaintiffs are further entitled to recover from Defendant the gains, profits and advantages that Defendant has obtained as a result of its wrongful acts.

61. Because of the willful nature of Defendant's wrongful acts, Plaintiffs are entitled to an award of exemplary damages under the common law, and treble damages and increased profits under 15 U.S.C. § 1117.

## SECOND CLAIM
### New York State Trademark Infringement
### New York General Business Law Article 24 § 360-o

62. Plaintiffs repeat and reallege the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

63. From their longstanding use of the LIQUID COTTON mark as a source identifier for their goods, Sunrise has acquired common law trademark rights in the LIQUID COTTON mark in connection with, among other things, high-quality fabric and clothing.

64. Pursuant to a license agreement with Sunrise, Smart Apparel uses the LIQUID COTTON mark in the U.S. and in this District specifically, including, but not limited to, through receiving and processing purchase orders for products sold under the LIQUID COTTON mark.

65. The actions of Defendant complained of herein are likely to create confusion and mistake and deceive consumers into believing that Defendant's goods are authorized by, licensed by, sponsored by or otherwise associated with Plaintiffs and/or Sunrise's common law rights in the LIQUID COTTON mark.

66. The foregoing acts of Defendant constitute willful and deliberate infringement of Sunrise's LIQUID COTTON mark in violation of the common law of the State of New York.

67. By reason of all the foregoing, Plaintiffs are being damaged by Defendant's willful use of the LIQUID COTTON mark in the manner set forth above and will continue to be damaged unless Defendant is immediately enjoined from using the LIQUID COTTON mark.

68. Trademark infringement claims under common law are permitted under New York General Business Law Article 24 § 360-o.

69. Plaintiffs will be irreparably injured by the continued acts of Defendant, unless such acts are enjoined.

70. Plaintiffs have no adequate remedy at law.

71. In addition to injunctive relief, Plaintiffs are entitled to all damages they have sustained in an amount to be determined at trial, including, but not limited to, Defendant's profits and gains as a result of its infringing acts described above, attorneys' fees and costs of this action.

### THIRD CLAIM
### New York State Unfair Competition
### New York General Business Law Article 24 § 360-l

72. Plaintiffs repeat and reallege the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

73. Plaintiffs have expended substantial time, resources and effort to develop and obtain an excellent reputation and goodwill for themselves, their goods and the LIQUID COTTON mark.

74. Upon information and belief, Defendant has knowingly and willfully misappropriated Sunrise's LIQUID COTTON mark in an effort to falsely create the impression that the Defendant's goods are sanctioned by Plaintiffs and in order to arrogate unto itself all of the goodwill associated with the LIQUID COTTON mark and Plaintiffs. Defendant's unlawful acts in misappropriating rights in Sunrise's LIQUID COTTON mark were intended to capitalize on Plaintiffs' goodwill for Defendant's own pecuniary gain.

75. Defendant's goods are calculated to and are likely to create confusion and to deceive and mislead consumers into believing that such goods originated with or are authorized by Plaintiffs, and has caused and/or is likely to cause confusion as to the source of Defendant's goods, all to the detriment of Plaintiffs.

76. Defendant's acts as alleged above are causing injury to Plaintiffs' business reputation.

77. Defendant's acts as alleged above constitute unfair competition and will, unless enjoined by this Court, result in the destruction and/or diversion of Plaintiffs' goodwill in the LIQUID COTTON mark, and the unjust enrichment of Defendant.

78. Defendant's activities constitute misappropriation of Plaintiffs' proprietary rights and goodwill in and to the LIQUID COTTON mark.

79. Defendant's activities violate New York General Business Law Article 24 § 360-l regarding unfair competition.

80. Upon information and belief, Defendant committed the acts alleged herein and is continuing to commit the acts complained of herein, intentionally, deliberately, fraudulently, maliciously, willfully, wantonly and/or oppressively with the intent to confuse the public and to injure Plaintiffs.

81. Plaintiffs have no adequate remedy at law and are suffering irreparable harm and damage as a result of the aforesaid acts of Defendant in an amount not yet determined or ascertainable.

82. Plaintiffs' business, goodwill, and reputation have been and will continue to be irreparably harmed by Defendant's activities unless Defendant is enjoined.

83. Plaintiffs' remedy at law is inadequate.

84. In addition, upon information and belief, Defendant has obtained gains, profits and advantages as a result of its wrongful acts in an amount not yet determined or ascertainable.

85. Plaintiffs have suffered and will continue to suffer irreparable injury and damages, in an amount not yet determined, for which Plaintiffs are entitled to relief. Plaintiffs seek damages and preliminary and permanent injunctive relief against further infringement.

## FOURTH CLAIM
### Deceptive Acts and Practices
### New York General Business Law § 349

86. Plaintiffs repeat and reallege the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

87. Defendant, without Plaintiffs' authorization or consent, and having knowledge of Plaintiffs' rights in and to the LIQUID COTTON mark, uses the LIQUID COTTON mark and/or marks confusingly similar thereto, to offer for sale goods to the public in direct competition with Plaintiffs.

88. Defendant's use of the LIQUID COTTON mark and/or marks confusingly similar thereto, is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of Defendant's goods and/or services, and is likely to deceive the public into believing that Defendant's goods and/or services originate from, are associated with, or are otherwise authorized by Plaintiffs.

89. Defendant's deceptive acts and practices involve public sales activities of a recurring nature.

90. The acts of Defendant have caused and are causing great and irreparable harm and damage to Plaintiffs, and unless permanently restrained and enjoined by this Court, such irreparable harm will continue.

## FIFTH CLAIM
### Unjust Enrichment

91. Plaintiffs repeat and reallege the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

92. Defendant has benefited from the unlawful and infringing use of the LIQUID COTTON mark because, upon information and belief, Defendant has derived and/or will derive

substantial revenue from the sale of goods through the use of Sunrise's LIQUID COTTON mark in connection with closely related goods, all at Plaintiffs' expense.

93. It would be against equity and good conscience to allow Defendant to retain the substantial revenue and profits it has realized and/or will realize through its unlawful use of Plaintiffs' intellectual property.

94. Defendant has been unjustly enriched by its unlawful use of the LIQUID COTTON mark.

95. The acts of Defendant have caused and are causing great and irreparable harm and damage to Plaintiffs, and unless permanently restrained and enjoined by this Court, such irreparable harm will continue.

96. As a direct and proximate result of Defendant's actions as stated herein, Plaintiffs have suffered damage to their reputation and damage to the goodwill of the LIQUID COTTON trademark. Further, Plaintiffs are entitled to exemplary damages as a result of Defendant's actions as described above.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

1. Ordering that Defendant and its parents, subsidiaries, affiliated companies, officers, agents, directors, employees, shareholders and attorneys and all those persons in active concert or participation with it who receive actual notice of the injunction by personal service or otherwise, be permanently restrained and enjoined from:

   a. Further infringing Sunrise's LIQUID COTTON mark, and from rendering, selling, marketing, offering for sale, advertising, promoting, displaying or otherwise offering of any goods under the LIQUID COTTON mark, or any mark confusingly similar thereto;

    b. Using any simulation, reproduction, counterfeit, copy or colorable imitation of Sunrise's LIQUID COTTON mark in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any unauthorized goods or services in such fashion as to relate or connect, or tend to relate or connect, such goods or services in any way to Plaintiffs, or to any goods or services sold, rendered, manufactured, sponsored or approved by or connected with Plaintiffs;

    c. Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any goods or services sold, rendered, promoted, advertised, marketed, manufactured, or distributed by Defendant are in any manner associated or connected with Plaintiffs, or are sold, rendered, manufactured, licensed, sponsored, approved or authorized by Plaintiffs;

    d. Using any false descriptions or representations or any false designations of origin or from otherwise committing any acts of unfair competition with respect to Plaintiffs and/or the LIQUID COTTON mark or by using Sunrise's LIQUID COTTON mark, or any marks colorably similar thereto, without Plaintiffs' authorization;

    e. Engaging in any other activity constituting unfair competition with Plaintiffs, or constituting an infringement of Sunrise's LIQUID COTTON mark, or of Plaintiffs' rights in, or to use or to exploit, the LIQUID COTTON mark.

  2. Directing that Defendant deliver for destruction all goods, products, signs, labels, brochures, advertising, promotional material, prints, packages, dyes, wrappers, receptacles and advertisements in its possession or under its control bearing the LIQUID COTTON mark, or any

simulation, reproduction, counterfeit, copy or colorable imitation of Sunrise's LIQUID COTTON mark, and all plates, molds, screens, heat transfers and means of making the same.

    3.    Directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that Defendant's goods sold or promoted by Defendant are authorized by Plaintiffs or related in any way to Plaintiffs' goods.

    4.    Directing that an accounting and judgment be rendered against Defendant for:

    a.    All profits received by Defendant from the sale of goods under the LIQUID COTTON mark, or any mark colorably similar thereto; and

    b.    All damages sustained by Plaintiffs on account of Defendant's trademark infringement and unfair competition.

    5.    Awarding Plaintiffs their costs in this action together with reasonable attorneys' fees and expenses as provided for by 15 U.S.C. §1117, and such other and further relief as the Court may deem equitable including, but not limited to, any relief set forth under §§ 34-36 of the Lanham Act, Sections 349 and 350 of the New York General Business Law and New York State common law.

    6.    Awarding Plaintiffs interest, including pre-judgment interest, on all sums.

    7.    Directing that the Court retain jurisdiction of this action for the purpose of enabling Plaintiffs to apply to the Court at any time for such further orders and directions as may be necessary or appropriate for the interpretation or execution of any order entered in this action, for the modification of any such order, for the enforcement or compliance therewith, and for the punishment of any violations thereof.

    8.    Awarding to Plaintiffs such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs, pursuant to Rule 38 of the Federal Rules of Civil Procedure, hereby demand a trial by jury.

Dated: New York, New York
April 26, 2016

Respectfully submitted,

PRYOR CASHMAN LLP

_____
Brad D. Rose (BR-2740)
Dyan Finguerra-DuCharme (DF-9228)
Ryan S. Klarberg (RK-4719)
7 Times Square
New York, New York 10036
Telephone: (212) 421-4100
Fax: (212) 798-6928
brose@pryorcashman.com
dfinguerra-ducharme@pryorcashman.com
rklarberg@pryorcashman.com

*Attorneys for Plaintiffs*